IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| GABRIEL RODRIGUEZ and JANETTE LOPEZ | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 03C 7727 JUDGE COAR |
| v. | ) ) | JURY DEMAND |
| LYNCH FORD, INC., | ) ) | MAGISTRATE JUDGE DENLOW |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs, Gabriel Rodriguez and Janette Lopez, bring this Complaint against Defendant, Lynch Ford, Inc., seeking redress for violation of the federal Credit Repair Organizations Act, ("CROA"), Equal Credit Opportunity Act, ("ECOA"), Fair Credit Reporting Act, ("FCRA"), the Truth In Lending Act, ("TILA"), and the Illinois Consumer Fraud Act ("CFA").

*Parties*

1.    Plaintiffs, Gabriel Rodriguez and Janette Lopez, are consumers residing in this district.

2.    Defendant, Lynch Ford, Inc., is a corporation organized and existing under the laws of the State of Illinois and doing business in Cook County, Illinois.

*Jurisdiction and Venue*

3.    Federal question jurisdiction arises under the Credit Repair Organizations Act, ("CROA"), Equal Credit Opportunity Act, ("ECOA"), Fair Credit Reporting Act, ("FCRA"), the Truth In Lending Act, ("TILA"), and 28 U.S.C. § 1331.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the acts giving rise to this action occurred in substantial part in this district.

### *Factual Allegations*

5.      In October 2002, Janette Lopez saw an advertisement in the Chicago Sun Times from Lynch Ford, Inc.

6.      The advertisement stated that they would help repair consumers credit by purchasing a car from them.

7.      Ms. Lopez called and spoke to Jorge Soto about the ad and he insisted she come in.

8.      On. October, 12, 2002, Ms. Lopez went to Lynch Ford and met with Jorge Soto.

9.      Ms. Lopez was not looking for a particular car but was more interested in repairing her credit.

10.     Ms. Lopez chose a 2003 Volkswagen Jetta.

11.     Ms. Lopez signed a purchase order, notice of requirement to provide insurance, application for limited coverage, and odometer disclosure statement.

12.     Ms. Lopez was given a Temporary Registration Plate.

13.     Ms. Lopez also wrote two checks for $1,000.00 for when the car got financed this would be used for a downpayment.

14.     Ms. Lopez made numerous calls and left messages inquiring about the financing terms.

15.     None of Ms. Lopez calls got returned.

16.     Finally, Ms. Lopez went to the dealership about the financing terms. She spoke with Ryan Jordan and was told that she needed a co-signer or would have to return the car.

17. Upon Ryan's suggestion, Ms. Lopez wanted to keep the car and repair her credit so she decided to call her uncle, Gabriel Rodriguez, to ask if he would co-sign for her.

18. Her uncle agreed to co-sign after being told by Ryan and Niko that he would be taken off the contract only if Ms. Lopez timely paid the car note for six months.

19. On October, 31, 2002, Ms. Lopez and her uncle Mr. Rodriguez went to the dealership to sign the necessary paperwork.

20. At this time Niko told Ms. Lopez, her husband and Mr. Rodriguez that they had to purchase gap insurance because it was required by the state.

21. Mr. Rodriguez signed the retail installment contract, omnicare, gap insurance, sales tax, and purchase order.

22. No documents were presented to Ms. Lopez to sign but she gave them a $1,000.00 downpayment.

23. Ms. Lopez then asked why was her uncle the only one they wanted to sign the paperwork.

24. Niko informed Ms. Lopez that "the banks work different now, your purchase order is separate from your uncle's, he's the co-signer and this is the way co-signing works. Your name does not appear above your uncle's anymore and it is suppose to be separate."

25. Niko then told her the payments would be due in December 2002 but in the meantime he would work with a bank that would approve this loan.

26. Starting in November, 2002, Ms. Lopez called because she did not receive the financing information and did not have a copy of the contract. She made numerous calls to the finance manager, Udo, that did not get returned.

27.    Ms. Lopez went to the dealership and spoke with Udo. Ryan then gave Ms. Lopez a copy of the contract for October 31, 2002.

28.    When Ms. Lopez got home and looked at the contract she realized that they gave her a copy that her uncle signed and not a copy of the purchase order and other documents that she had signed.

29.    Ms. Lopez called Ryan about the missing purchase order and other documents. He said "oh, I didn't put it in there? I will mail it to you."

30.    Ms. Lopez never received a copy of the purchase order and other documents that she requested.

31.    Again, Ms. Lopez made numerous calls that did not get returned.

32.    On December 31, 2002, Ms. Lopez went to the dealership and spoke with Udo. She asked if the car was under her name and explained that she was getting a lot of run- arounds, calls were not getting returned, and she just needed to know this information.

33.    She also informed him that she still have not received the payment booklet.

34.    Udo told her that she would not get anything until she makes the first payment and guaranteed her that Mr. Rodriguez was the co- signer.

35.    Ms. Lopez informed him that she did not know where to send her first payment.

36.    Udo looked into their system and told her that he could not get this information from the system at this time. He also told her that he believed it was Chase and would call her later with the necessary information.

37.    Ms. Lopez also asked why was the omnicare under her uncle's name because she was concerned about future services needed for the car and if something was to happen to her how would she

prove to omnicare that she was entitled to their services if her uncle's name is the only name that appears on the contract.

38.     Udo told her don't worry about it, they don't ask for names all she need is the VIN number.

39.     Ms. Lopez then went see Ryan. She asked him about the purchase order she signed on October 12, 2002 and informed him that she would wait for her copies.

40.     Ryan then gave her the original purchase order, notice of requirement to provide insurance, application for limited coverage, and odometer disclosure statement. that she signed on October 12, 2002.

41.     Ms. Lopez later realized that Ryan had given her the original documents that she signed on October 12, 2002, and copies of the purchase order dated October 31, 2002, with her name, her uncle's address, and was not signed.

42.     Ms. Lopez realized that Lynch Ford was trying to trick her into thinking that she was actually part of the contract signed by her uncle when she was not.

43.     Lynch Ford called Ms. Lopez and told her that Chase Manhattan is the finance company and gave her their information.

44.     Around January 2003, Ms. Lopez called Chase because she was late with her car payment due to not receiving the payment booklet or payment information.

45.     Chase informed Ms. Lopez that she was not on the contract and Gabriel Rodriguez was the sole buyer.

## COUNT I
### Violation of Credit Repair Organizations Act
### (Brought on Behalf of Both Plaintiffs)

46.     Plaintiffs reallege and incorporate paragraphs 1 through 45 into this count.

47.     Lynch Ford fraudulently induced Gabriel Rodriguez into becoming a straw purchaser on a car sold to his niece Janette Lopez.

48.     Lynch Ford falsely represented to Chase Manhattan that Gabriel Rodriguez was the purchaser of the Jetta, in order to alter the identification of the true purchaser of the vehicle. This was done to prevent the display of the actual purchaser's credit record, history, and rating, and thus conceal from Chase Manhattan adverse information that is accurate. Lynch Ford consequently made untrue or misleading statements with respect to the credit worthiness, credit standing, and credit capacity of the purchaser.

49.     Moreover, Lynch Ford counseled Gabriel Rodriguez to sign documents that reflected that he was the purchaser in order to alter the identification of the true purchaser of the vehicle. The intended effect of these instructions was to misrepresent the credit capacity of the true purchaser and prevent the display of the actual purchaser's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete.

50.     The above-described conduct violates §1679b of the CROA.

51.     Plaintiffs, Gabriel Rodriguez and Janette Lopez suffered damages as a result of this conduct.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendant, Lynch Ford, and:

(A)     Award actual damages, in an amount to be proven at trial;

(B)     Award punitive damages in an amount sufficient to punish and deter Lynch Ford

and deter other similarly-situated businesses from conducting themselves in the manner described in this count;

(C)     Award costs and attorney fees;

(D)     Award any other relief the Court deems just and appropriate.

**COUNT II**

*Violation of Equal Credit Opportunity Act Brought on Behalf of Janette Lopez*

52.     Plaintiff incorporates paragraphs 1 through 45 into this count.

53.     Lynch Ford is a "creditor," as that term is defined by the ECOA.

54.     Ms. Lopez requested an extension of credit from Lynch Ford to buy a 2003 Volkswagen Jetta.

55.     Lynch Ford extended credit to Ms. Lopez.

56.     Lynch Ford revoked that credit when it cancelled the credit contract.

57.     Defendant took adverse credit action against Ms. Lopez and failed to notify her of the adverse action and the reasons, in writing, as required by the ECOA.

58.     By failing to notify Ms. Lopez in writing about the adverse credit action, Defendant violated Section 1691(d) of the Equal Credit Opportunity Act and is liable to Ms. Lopez under Section 1691e.

WHEREFORE, Plaintiff, Janette Lopez, respectfully requests that this Court enter judgment in her favor against Defendant, Lynch Ford, and award:

(A)     Actual damages, pursuant to 15 U.S.C. 1691e(a), in an amount to be proven at trial;

(B)     Punitive damages, pursuant to 15 U.S.C. 1691e(b), in an amount sufficient to punish and deter Lynch Ford and deter other similarly-situated automobile dealers from conducting themselves in the manner described in this count;

    (C)    Costs and attorney fees, pursuant to 15 U.S.C. 1691e(d); and

    (D)    Any other relief the Court deems just and appropriate.

## COUNT III
### *Violation of Fair Credit Reporting Act Brought on Behalf of Janette Lopez*

59.    Plaintiff incorporates paragraphs 1 through 45 into this count.

60.    Lynch Ford took adverse action against Ms. Lopez based on information contained in her credit report.

61.    Lynch Ford never provided the disclosure required by 15 U.S.C. § 1681m.

62.    Lynch Ford willfully failed to comply with 15 U.S.C. § 1681m.

63.    Ms. Lopez suffered damages as a result of Lynch Ford's conduct in that she was deprived of valuable economic information; deprived of her rights to this information under the FCRA; and suffered emotional distress, including but not limited to aggravation and confusion.

WHEREFORE, Plaintiff, Janette Lopez, respectfully requests that this Court enter judgment in her favor and against Defendant, Lynch Ford, and award her:

    (A)    Any actual damages proved at trial or damages in an amount not less than $100 and not more than $1,000, under 15 U.S.C. 1681n;

    (B)    Punitive damages, under 15 U.S.C. § 1681n in an amount as the Court may allow;

    (C)    Costs and attorney fees, under 15 U.S.C. § 1681n; and

    (D)    Any other relief the Court deems just and appropriate.

## COUNT IV
### *Violation of the Truth in Lending Act*
### *(Brought on Behalf of Both Plaintiffs )*

64.    Plaintiffs incorporates paragraphs 1 through 43 into this count.

65.    The Truth in lending Act, 15 U.S.C. § 1638(b)(1) mandates timely written disclosures of financing terms.

66.    Regulation Z, 12 C.F.R. § 226.17(a), interpreting TILA, states in relevant part:

> *(a) Form of disclosures*
>
> > *(1)  the creditor shall make disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep.....*

67.    One of the financing terms that must be accurately and timely disclosed is the amount financed. 15 U.S.C. § 1638(a)(2)(A) explains how the amount financed shall be computed, starting with the cash price less any down payment and/or trade-in. Regulation Z. 12 C.F.R. § 226.18, implementing this section, sets forth the content of the disclosures required by TILA.

68.    The October 31, 2002 retail installment contract prepared by Lunch Ford, does not accurately disclose the material disclosures.

69.    The cash price of the Jetta is listed as $19,550.00 and a down payment of $1,000.00 is disclosed, reducing the cash price to $18,550.00. With amounts for gap/resource, documentary fees, and omni care payments added in, the amount financed, according to the TILA disclosure is $22,399.41.

70.    This amount is wrong. The GAP insurance should be included due to (1) the false representation it was required and (2) the fact that Rodriquez did not want the insurance and thought he

was merely co-sigining.

71.    Moreover, Defendant did not deliver an accurate and completed contract in a form Plaintiffs could keep, prior to consummation, as required by the TILA.

72.    The true cost of credit was never disclosed to Plaintiff in accordance with the TILA and therefore is entitled to damages pursuant to 15 U.S.C. § 1640 and recission of the deal.

WHEREFORE, Plaintiffs, Gabriel Rodriguez and Janette Lopez, respectfully requests that this Court enter judgment in their favor and against Defendant, Lynch Ford, and award them:

(A)    Actual damages pursuant to 15 U.S.C. § 1640(a)(1) in an amount to be determined at trial;

(B)    Statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

(C)    Recission of the deal;

(D)    Attorney fees and costs pursuant to 15 U.S.C. § 1640(a)(3); and

(E)    Any other relief the Court deems just and appropriate.

## COUNT V
### *Violations of the Illinois Consumer Fraud Act*

73.    Plaintiffs incorporates paragraphs 1 through 45 into this count..

74.    As described above, Defendant engaged in a false "bait and switch" advertising tactics and all of this conduct occurred during a course of conduct involving trade or commerce.

75.    Defendant also violated the Illinois Administrative Rules on Motor Vehicle Advertising, promulgated by the Illinois Attorney General.

76.    In addition, Defendant engaged in unfair and deceptive acts when it arranged a straw purchase.

77.     The conduct of Defendant Lynch Ford offends public policy, is immoral, unethical, oppressive and/or unscrupulous, and causes substantial injury to consumers.

78.     Defendant's conduct is therefore an unfair business practice as defined by the CFA by reference to the Federal Trade Commission's interpretation of what constitutes an unfair business practice, 815 ILCS 505/2.

79.     Alternatively and in addition, Defendant's false advertising create a likelihood of confusion or misunderstanding by consumers and therefore constitute a deceptive trade practice under 815 ILCS 505/2 by reference to the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(12).

80.     Defendant intended that Plaintiff and other rely on its advertising representations.

81.     In addition to the deceptive practices above, Lynch Ford engaged in unfair practices under the ICFA by: (1) inducing Ms. Lopez to take possession of the Jetta without having her financed; (2) mirepresenting to the Plaintiffs that they must buy GAP insurance as required by law; (3) creating false documents to make Ms. Lopez think she was actually part of her uncle's contract; and (4) lying to Plaintiffs about the procedures for co-signing.

82.     Lynch Ford also committed an unfair practice known as "spot delivery".

83.     Spot delivery is a practice in which a car dealer executes a sale and delivers the car before any financing has been provided to the consumer.

84.     Lynch Ford performed a spot delivery on October 12, 2002 and October 31, 2002 when it executed a purchase order and gave possession of the Jetta to Plaintiffs, without clearly disclosing that if the financing could not be assigned, Lynch Ford could back out of the deal.

85.     Lynch Ford's spot delivery was an unfair practice because the transaction involved the

violation of the state and federal statutes, such the Illinois Consumer Fraud Act and the Truth in Lending

Act, and offended public policy as established by these and other consumer protection statutes.

86.     Lynch Ford's spot delivery was also a deceptive practice because it caused Plaintiffs to

be confused as to: (1) their rights of possession to the vehicle; (2) their potential and/or actual contractual

obligation(s); and (3) the status of ownership and title to the vehicle.

87.     These actions have proximately caused the Plaintiffs to suffer damage, including but not

limited to, emotional distress, inconvenience, and aggravation.

WHEREFORE, Plaintiffs, Gabriel Rodriguez and Janette Lopez, respectfully requests that this

Court enter judgment in their favor and against Defendant Lynch Ford and award:

       A.     Actual damages pursuant to 815 ILCS 505/10a(a) in an amount to be
determined at trial;

       B.     Punitive damages;

       C.     Attorney fees and costs pursuant to 815 ILCS 505/10a(c);

       D.     Any other relief the court deems just and appropriate.

Respectfully submitted,
Gabriel Rodriguez and Janette Lopez, Plaintiffs

By: _____
One of their Attorneys

Christopher Langone
Craig Frisch
Jeffrey Naffziger
The Langone Law Firm
25 East Washington, Suite 1805
Chicago, Illinois 60602
(312) 782-2000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet 03 C 7727

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

JUDGE COAR

MAGISTRATE JUDGE DENLOW

**Plaintiff(s): GABRIEL RODRIGUEZ and JANETTE LOPEZ**

County of Residence: COOK

Plaintiff's Atty:  LANGONE LAW FIRM
25 E. WASHINGTON , SUITE 1805
CHICAGO, IL 60602
312-782-2000

**Defendant(s):LYNCH FORD, INC.**

County of Residence:

Defendant's Atty:

DOCKETED OCT 31 2003

FILED 03 OCT 30 PM 3:54

II. Basis of Jurisdiction:          **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal
Parties (Diversity Cases Only)
                  Plaintiff:- **N/A**
                  Defendant:- **N/A**

IV. Origin :                        **1. Original Proceeding**

V. Nature of Suit:                  **890 Other Statutory Actions**

VI.Cause of Action:                 **EQUAL CREDIT OPPORTUNITY ACT**

VII. Requested in Complaint
        Class Action:**No**
        Dollar Demand:
        Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date:          10/30/03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size**

1-8

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

GABRIEL RODRIGUEZ and JANETTE LOPEZ

V.

LYNCH FORD, INC

Case Number:

03C 7727

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

PLAINTIFFS

JUDGE COAR

MAGISTRATE JUDGE DENLOW

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME CHRISTOPHER LANGONE | NAME CRAIG FRISCH |
| FIRM LANGONE LAW FIRM | FIRM LANGONE LAW FIRM |
| STREET ADDRESS 25 E. WASHINGTON, SUITE 1805 | STREET ADDRESS 25 E. WASHINGTON, SUITE 1805 |
| CITY/STATE/ZIP CHICAGO, IL 60602 | CITY/STATE/ZIP CHICAGO, IL 60602 |
| TELEPHONE NUMBER 312-782-2000 / FAX NUMBER 312-782-2022 | TELEPHONE NUMBER 312-782-2000 / FAX NUMBER 312-782-2022 |
| E-MAIL ADDRESS CLANGONE@LANGONELAW.COM | E-MAIL ADDRESS CFRISCH@LANGONELAW.COM |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6211105 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6274957 |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☑ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

DOCKETED OCT 31 2003