# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7727 | **DATE** | 11/16/2004 |
| **CASE TITLE** | Gabriel Rodriguez and Janette Lopez vs. Lynch Ford, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Defendant's Motion for Summary Judgment & Defendant's Motion to Strike Portions of Plaintiffs' Brief Which Purport To Move for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons discussed in the attached opinion and order, Defendant's Motion to Strike Portions of Plaintiffs' Brief Which Purport to Move for Summary Judgment [Doc. No. 17] is DENIED. Defendant's Motion for Summary Judgment [Doc. No. 7] is GRANTED IN PART AND DENIED IN PART.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | NOV 18 2004 | | |
| ✓ | Docketing to mail notices. | | rbp | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mvf(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 1 8 2004

| | | |
|---|---|---|
| GABRIEL RODRIGUEZ and JANETTE LOPEZ | ) ) ) | |
| Plaintiffs, | ) ) | No. 03 C 7727 |
| v. | ) ) | HONORABLE DAVID H. COAR |
| LYNCH FORD, INC. | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Gabriel Rodriguez and Janette Lopez brought a five count complaint against Lynch Ford, in which they alleged violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1602 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m, the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2 *et seq.* Before this Court is the defendant's motion for summary judgment on all counts of Lopez and Rodriguez's complaint, and defendant's motion to strike those portions of plaintiffs' brief that purport to move for summary judgment. For the reasons discussed herein, defendant's motion for summary judgment is granted in part and denied in part; defendant's motion to strike is denied.

### I.    Undisputed Facts

Sometime in October 2002, plaintiff Janette Lopez saw an advertisement in the *Chicago Sun-Times* from defendant Lynch Ford, Inc. The advertisement indicated that Lynch Ford would

-1-



help consumers with bad credit repair their credit by purchasing a car. After seeing this advertisement, Lopez call Lynch Ford and spoke to George Soto, a sales person. Lopez told Soto that she was looking for a car but did not have good credit. Soto asked Lopez to come to the dealership, which she did on October 12, 2002.

While she was at the Lynch Ford dealership on the evening of October 12, 2002, Lopez selected a 2003 Volkswagen Jetta that she wished to purchase. Lopez gave permission for Lynch Ford to request her credit report. At about 7:00 p.m., Lopez was told by a Lynch Ford employee that he had just spoken with a bank, which needed a $2,000 down payment in order to finance the car. Lopez signed two Vehicle Purchase Orders for the Jetta, one with hand-written price terms, and one with typed price terms. The terms of the Vehicle Purchase Order indicated that Lopez would make a down payment of $2,000 and then make monthly payments of $459 for 72 months. A section entitled "Financing Terms" appears in the middle of the Vehicle Purchase Order,[1] and discloses that the sale is contingent on a condition subsequent, namely that the dealer is able to obtain financing for the purchaser. Lopez signed the purchase order containing this clause. In addition, Lopez signed a notice of requirement to provide insurance, an application for limited coverage, a sales tax return, and an odometer disclosure statement. The agreement to provide

---

[1] The section reads: "DEALER ARRANGED FINANCING. In the event of a time sale, LYNCH SHALL NOT BE OBLIGATED TO SEE UNTIL AND UNLESS a finance source approves this order and agrees to purchase a retail installment contract between Purchaser and Lynch based upon this order. As part of obtaining financing, Purchaser agrees to provide Lynch with a true, correct and complete credit application and to cooperate fully in obtaining financing including the providing of any supporting documentation. This Vehicle Purchase Order may be canceled by Lynch if Lynch determines it cannot obtain third party approval and may be canceled by either party if no financing is obtained for Purchaser on the agreed terms within fifteen (15) business days after the date of this Vehicle Purchase Order. If this Vehicle Purchase Order is terminated as a result of the inability of Purchaser to obtain third party financing, Purchaser shall return the vehicle to Purchaser any trade-in vehicle and any down payment. IN THE EVENT PURCHASER FAILS TO RETURN THE VEHICLE TO LYNCH WITHIN 24 HOURS, PURCHASER AUTHORIZES AND EMPOWERS LYNCH TO REPOSSESS THE VEHICLE WITH OR WITHOUT LEGAL PROCESS AND BY ENTRY ONTO PURCHASER'S PROPERTY.

insurance states, "I have recently financed the purchase of a motor vehicle." Lopez was given a temporary license plate, and photocopies of all the documents she had signed. She was told that she would receive the originals after Udo Wegner, Lynch Ford's finance manager, signed off on them; Wegner was not in the dealership that evening. Lopez then drove the Jetta off the lot.

Between October 12 and October 24, 2002, Lopez heard nothing further about the Jetta purchase. Lopez stated that she called Lynch Ford during that time, but no one called her back. On or about October 24, 2002, Lopez went to Lynch Ford in person. She spoke with Ryan Jordan, a Lynch Ford employee, who told her that Lynch had been unable to finance the vehicle. Jordan informed Lopez that she would need a co-signer or she would have to return the Jetta.

Lopez asked her uncle, plaintiff Gabriel Rodriguez, to be her co-signer on the Jetta. On October 31, 2002, Lopez returned to Lynch Ford with her husband and Rodriguez. Rodriguez signed a new Vehicle Purchase Order, a Retail Installment Contract, a GAP installment sale contract, and an OmniCare vehicle service contract application. The Retail Installment Contract ("RIC") contains a "Federal Truth-In-Lending Disclosure Statement" on the upper left portion of the document. This box, which is set off from the rest of the text on the page by a black border, discloses an Annual Percentage Rate ("APR") of 8.39%, a Finance Charge of $5,192.19, an amount financed of $22,399.41, a payment total of $27,591.60, and a Total Sale Price of $28,591.60, including a down payment of $1,000.00. Lopez paid the down payment. The terms of the disclosure further provided that the contract was for 60 monthly payments of $459.86, which were to commence in December 2002. Lopez did not sign any of these forms, although both the RIC and the GAP installment sale contract had spaces for two purchasers to sign. Rodriguez was given a copy of the RIC.

-3-

The RIC that Rodriguez signed was assigned to Chase Manhattan Bank, U.S.A., NA. In December 2002, Rodriguez received a Vehicle Identification Card for the 2003 Volkswagen Jetta from the Illinois Secretary of State by mail at his home address. The registration was in his name only.

On December 31, 2002, Lopez went to Lynch Ford again to inquire whether the car was in her name because she had not received any information about the financing or where to send payments. She requested copies of documents relating to the purchase of the Jetta. Ryan Jordan gave her the original Vehicle Purchase Order, notice of requirement to provide insurance, application for limited coverage, and odometer disclosure statement that she signed on October 12, 2002. Lynch Ford subsequently notified Lopez that Chase Manhattan was the bank that financed the Jetta. In January 2003, Lopez contacted Chase Manhattan directly because she had not received payment information. Chase Manhattan informed Lopez that her name was not on the contract and that, in fact, Gabriel Rodriguez was the sole purchaser of the Jetta.

## II.    Analysis

### A.    Summary Judgment Standard

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for

-4-

the non-moving party, there is no genuine issue for trial.'" Id. Once a motion for summary

judgment has been filed, "the burden shifts to the non-moving party to show through specific

evidence that a triable issue of fact remains on issues on which the non-movant bears the burden

of proof at trial." Liu v. T&H Machine, Inc., 191 F.2d 790, 796 (7th Cir. 1999) (citing Celotex

Corp. v. Catrett, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere

scintilla" of evidence to carry its burden under the summary judgment standard. See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility

determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding

a summary judgment motion. Id. at 255.

## B.    Clarification of Pleading Requirements Under Federal Rule of Civil Procedure 56 and Local Rule 56.1

The purpose of a summary judgment proceeding is to identify those cases that be resolved

without a trial. To that end, the courts in this District have clarified the requirements of summary

judgment pleadings in Local Rule 56.1. This rule requires parties to file statements of material

facts "as to which the ... party contends there is no genuine issue and that entitle the ... party to a

judgment as a matter of law." N.D. Ill. L.R. 56.1(a)(3). Local Rule 56.1 outlines the obligations

of the parties in a summary judgment proceeding. Courts in this district have broad discretion to

enforce the rule, and the Seventh Circuit regularly upholds strict enforcement of Local Rule 56.1.

See, e.g., Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995) (citing cases).

This Court urges parties in this case, in particular Plaintiffs' counsel, to examine Local

Rule 56.1 more closely. Judge Castillo's detailed discussion of Rule 56.1 requirements and

procedures in Malec v. Sanford, 191 F.R.D. 581 (N.D. Ill. 2000), provides an excellent guide to

proper form for statements of material facts. "There are three separate types of statements governed by Rule 56.1: the movant's statement, the nonmovant's response and statement of additional facts, and the movant's response to the additional facts." Id. at 583. Statements of material fact should consist of short statements making specific references to materials supporting the fact set forth in the statement. A nonmovant's statement of facts must "cite specific evidentiary materials" that justify the nonmovant's denial of a movant's factual allegation. A general denial is insufficient. The statement of facts is not the place for argumentative statements; it is also not the place for drawing inferences or making legal arguments. Malec, 191 F.R.D. at 584.

All material facts must be supported by specific references to the record, or, in the case of any disagreement with the opposing party's statement of material fact, by specific references to affidavits or other supporting materials relied upon. Plaintiffs provided only Lopez's deposition transcript and an additional affidavit to support their claims. This Court finds such a lack of evidentiary support baffling. It is true that depositions can be quite costly and that prosecuting cases such as this is an unpredictable financial gamble. However, other evidence can be more economically obtained. The cost of acquiring and photocopying a credit report is unlikely to exceed forty dollars, and indeed may even be much less, but could be worth far more than that in preserving a party's claims beyond the summary judgment stage. Moreover, "although the evidence of a factual contention need not be admissible itself, it must represent admissible evidence." Id. at 585. Hearsay "is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions ... are admissible in summary judgment proceedings to establish the truth of what is attested or deposed." Eisenstadt

v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997) (cited in <u>Malec</u>, 191 F.R.D. at 585). Thus, the sections of plaintiffs' statement of facts in which plaintiffs assert "facts" based on inadmissible hearsay statements are inappropriate and deemed inadmissible. <u>See, e.g.</u>, Pls.'s Resp. to Def.'s Stmt of Facts ¶ 105.

The court will consider the unopposed factual contentions contained in the movant's initial statement of facts and in the non-movant's statement of additional facts. A movant has the duty to respond to any facts contained in the statement of additional facts; the "sanction for failing to reply is identical to that imposed for failing to respond: admission of the opposing party's factual contentions." <u>Malec</u>, 191 F.R.D. at 584. Here, defendant did not respond to plaintiffs' statement of additional facts and may not object to this court's decision to admit any as true.

C.     **Defendant's Motion to Strike Portions of Plaintiff's Reply Brief Which Purport To Move For Summary Judgment**

Defendant Lynch Ford moves this Court to strike the portions of plaintiffs' response brief that purport to move for summary judgment. Lynch Ford argues that plaintiff is time-barred from moving for summary judgment because they failed to file a cross-motion before the deadline for filing dispositive motions. Def.'s Mot. to Strike at 1-2. Lynch further argues that plaintiffs' filing should be barred because it caused surprise and, by implication, prejudice to defendant's claims. Plaintiff responds that summary judgment may enter in favor of the non-moving party, with or without a cross-motion, when it is apparent that the facts and law of the case support such a decision. They allege that their response to defendant's motion for summary judgment simply

notes that summary judgment should not only be denied to the defendant but rather should issue to the plaintiffs. Pls.'s Mem. Resp. to Def.'s Mot. to Strike at 2.

In its memorandum in support of its motion to strike, defendant cites only one case, Choudhry v. Jenkins, 559 F.2d 1085 (7th Cir. 1977), in which a Seventh Circuit panel reversed a District Court's *sua sponte* summary judgment order. The Seventh Circuit reasoned that it was improper for the District Court judge to grant summary judgment *sua sponte*, as was true in that case, because it caught all the parties by surprise. More troubling to the appellate panel was that substantial factual issues remained to be decided at the time the District Court issued summary judgment. Id. at 1090-91. The Choudhry court predicated its decision on the prejudicial effect of a court's decision to issue summary judgment *sua sponte*; it did not state a hard and fast rule against entering summary judgment against the party who originally moved for it. See Sawyer v. United States, 831 F.2d 755, 759 (7th Cir. 1987) (summary judgment may be granted "for a party without a motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond").

A summary judgment motion obligates a court to examine the facts and the law and decide the case as a whole. Dayton Electric Manufacturing Co. v. APCOM, Inc., 782 F. Supp. 389, 395 (N.D. Ill. 1992). "When the court does just that, the [movant] cannot claim unfair surprise." Id. The Dayton Electric court found that it was appropriate to grant summary judgment for plaintiffs *sua sponte*, and not for the defendant-movant. It noted that the decision was issued on the same issues as were presented in the motion, which resulted in "little chance of procedural prejudice." Dayton Electric, 782 F. Supp. at 395. It also noted that because defendants had made the original summary judgment motion, they had had an incentive to develop the record fully and

had done so in their statement of material facts. The parties had also conducted extensive discovery and had been in litigation for "alleged discovery abuses." Id. In the case before this Court, plaintiffs' assertion that summary judgment should not issue to defendant but rather to them is based on the issues raised by defendant. There is minimal risk of surprise. Moreover, defendant had–and took–the opportunity to file a reply brief to plaintiffs' response, thereby affording it the chance to address plaintiffs' claims directly. Defendant correctly notes that there has been little discovery in this case, but that is not itself sufficient to strike portions of plaintiffs' brief. Rather, this Court will address the arguments raised in all pleadings on defendant's motion for summary judgment in turn. Finding no procedural prejudice and no surprise to the parties, this Court denies defendant's motion to strike.

**D.      Violation of the Credit Repair Organizations Act**

Defendant moves this court to grant summary judgment on plaintiffs' claim under the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.*, on the ground that defendant is not a credit repair organization as defined in § 1679a(3)(A), and did not make any misrepresentation to any creditor. Plaintiffs respond that defendant is a credit repair organization for the purposes of § 1679b, which applies to "any person." 15 U.S.C. § 1679b (1998).

Defendant does not fall into the definition of a "credit repair organization" under § 1679a. To do so, plaintiff would have to show that defendant 1) used any instrumentality of interstate commerce or the mails, in order to 2) sell, provide, or perform (or represent that it could do so); 3) in return for valuable consideration; 4) services or advice about services designed to improve a consumer's credit record, credit history, or credit rating. 15 U.S.C. § 1679a(3)(A). Here, Lopez alleges that Lynch Ford placed an advertisement in the *Chicago Sun-Times*, stating that it could

help consumers improve their credit through a car purchase. Lopez did not save the advertisement and plaintiffs' counsel has not produced it. Lopez also has not alleged that Lynch Ford received additional consideration for providing Lopez with such services. See Parker v. 1-800 Bar None, 2002 WL 2155530 (N.D. Ill. Feb. 12, 2002) (citing Sannes v. Jeff Wyler Chevrolet, Inc., 1999 WL 33313134, at *3 (S.D. OH Mar. 31, 1999)).[2] Thus, plaintiff has not met the requirements for showing defendant is a credit repair organization under section 1679a.

Lynch Ford's argument is one that has been used by other, similar, defendants in this District. See, e.g., Parker, 2002 WL 2155530 (N.D. Ill. Feb. 12, 2002); Bigalke v. Creditrust Corp., 162 F. Supp. 2d 996 (N.D. Ill. 2001); Vance v. Nat'l Benefit Ass'n, 1999 U.S. Dist. LEXIS 13846 (N.D. Ill. Aug. 26, 1999). Defendant relies on Parker for its proposition that because it does not satisfy the definition in § 1679a, it is not a credit repair organization for any purpose under the Act. However, Lynch Ford would have been wise to continue reading to or, at least, grudgingly acknowledge the next page of the opinion, where Judge Manning clearly states that, under facts very similar to those of the instant case, plaintiff "can nevertheless state a claim ... under section 1679b of the CROA." Parker, 2002 WL 215530, at *5. Several other courts in this district have adopted a similar view, noting that section 1679b applies to "any person" and therefore reaches more broadly than section 1679a; it is not necessary to fit within the definition of "credit repair organization" set forth in 1679a to be limited by the prohibitions of 1679b. See Bigalke v. Creditrust Corp., 162 F. Supp. 2d 996, 999 (N.D. Ill. 2001) ("section 1679b(a) applies

---

[2]It is worth noting that the court in Sannes admonished the defendant auto dealership to "modify the language of its advertisements" because it "advertised more than an ability to arrange or assist with financing." In that case, the dealership advertised that it could help "re-establish" consumers with "wrecked" credit, which the court found "implies that financing a new car purchase at Wyler Chevrolet will help consumers improve their credit rating." Sannes, 1999 WL 33313134, at *2. This Court views the facts of the instant case as very similar to those of Sannes.

to "person[s]" which is a broader definition than that of a credit repair organization"); <u>Vance v.</u>
<u>Nat'l Benefit Ass'n</u>, 1999 U.S. Dist. LEXIS 13846 (N.D. Ill. Aug. 26, 1999) ("Other [CROA]
prohibitions [namely section 1679b] apply to any "person").

To state a claim under section 1679b(a), plaintiff must show that defendant "make[s] any
statement, or counsel or advise any consumer to make any statement, which is untrue or
misleading (or which, upon the exercise of reasonable care, should be known by the credit repair
organization, officer, employee, agent, or other person to be untrue or misleading) with respect to
any consumer's credit worthiness, credit standing, or credit capacity to any consumer reporting
agency" or credit-granting institution. 15 U.S.C. § 1679b(a)(1)(A), (B). Nor may defendant make
any statement "the intended effect of which is to alter the consumer's identification to prevent the
display of consumer's credit record, history, or rating for the purpose of concealing adverse
information that is accurate...." 15 U.S.C. § 1679b(a)(2).

Plaintiff alleges that Lynch Ford arranged a straw purchase. She alleges they did this by
telling her that contemporary bank practice is to create a co-signer agreement by combining a
Vehicle Purchase Order form signed by one purchaser (Lopez) with a Vehicle Purchase Order
and Retail Installment Contract signed by the second purchaser (Rodriguez). She further alleges
that Lynch Ford created a Vehicle Purchase Order dated October 31, 2002, purportedly signed
only by her, which she neither saw nor signed on that date. Lopez Dep. at 49-50. Moreover,
Lopez alleges that Lynch Ford continued to deceive her by telling her in December 2002 that the
car purchase was in her name, when that was not true. Lopez Dep. at 58. Finally, Lopez asserts
that Lynch Ford violated § 1679b(a)(1) by misrepresenting who made the $1,000 down payment
when it failed to disclose that it was she who paid rather than Rodriguez. Defendant argues that it

did not make any misrepresentation to any credit-extending institution. Rather, defendant alleges that it truthfully told Lopez it could not obtain financing for her and gave her a choice: return the Jetta or "find someone else with sufficient credit to purchase the car." Def.'s Mem. at 7. Lynch Ford claims that it then "accurately told Chase Manhattan Bank that plaintiff Rodriguez was the purchaser of the car." Id. at 8.

Lynch Ford's assertion that it accurately disclosed plaintiff Rodriguez's identity to Chase Manhattan Bank is correct. The dispute is whether this disclosure in any way prevented the display of the adverse information in the consumer's credit record. Lopez maintains that Lynch Ford told her that Rodriguez was serving merely as her co-signer, and that financing for the Jetta would be secured in her name alone or in addition to Rodriguez. Moreover, Lopez alleges Lynch Ford created a fraudulent Purchase Order designed to persuade her that she and Rodriguez had entered a co-signer agreement, when in fact Rodriguez was the sole purchaser. Instead of a co-signer agreement, Lynch Ford submitted only the paperwork signed by Rodriguez alone to the credit institution. In so doing, Lopez argues, Lynch Ford falsely represented to Chase Manhattan Bank that Rodriguez was the sole purchaser, which functioned to alter the identification of the consumer in the transaction. This Court finds that Lopez has raised a dispute about a material fact under the CROA. Therefore, summary judgment on claim I is denied.

### E.     Violation of the Equal Credit Opportunity Act

Lynch Ford moves for summary judgment on plaintiffs' Equal Credit Opportunity Act ("ECOA") claim, 15 U.S.C. § 1691 *et seq.* Lynch Ford admits that it is a "creditor" as defined by the ECOA, but alleges that it did not take adverse action against Lopez, specifically that it did not unilaterally decide not to submit Lopez's credit application to any lender. Lynch Ford states,

however, that it "only has the documents provided by Lopez .... Lynch does not have the records that demonstrate the Lopez was denied by any bank. However, it is Lynch's standard practice to submit its customer's credit applications to banks and finance companies for review." Def.'s Mem. at 8. Lopez responds that summary judgment should not issue for defendant but rather should be entered for plaintiff. Lopez argues that Lynch Ford took adverse action against her by refusing to submit her individual credit application to any lender, and instead requiring her to apply with a co-signer.

The Seventh Circuit has found that a unilateral decision not to submit a credit application on behalf of a prospective automobile purchaser to any lender is an "adverse action" under the ECOA. See Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971 (7th Cir. 2004). Lopez seeks to defeat summary judgment by arguing that Lynch Ford did not submit her application to any lender. As support for this contention, plaintiff offers Lopez's affidavit that she had requested a copy of her credit report from the Trans Union credit bureau, and that the report showed no credit inquiries connected to the purchase of the Jetta during this time period. Plaintiff did not submit the credit report itself, however, and as such, her statement is barred as double hearsay. This Court refers parties to its earlier discussion of the requirements of Local Rule 56.1. Without further evidentiary support, plaintiff's effort to overcome defendant's motion for summary judgment fails for want of raising an issue of disputed material fact. Summary judgment is granted for the defendant on Plaintiff's ECOA claim.

**F.     Violation of the Fair Credit Reporting Act**

Defendant moves this Court to grant summary judgment in its favor on plaintiff Lopez's Fair Credit Reporting Act ("FCRA") claim. Lynch Ford asserts that it did not take any adverse

action against Lopez. In response, Lopez alleges that Lynch Ford did take an adverse action against her when it denied her credit in her own name to purchase the Jetta, thereby triggering the notice requirement of 15 U.S.C. § 1681m.

This Court will analyze this claim under § 1681m(a), which is the only subsection the facts support. Neither party states which subsection its briefing addresses, which this Court finds irregular and an inefficient use of all parties' resources. Section 1681m states that "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall" notify the consumer of the adverse action, orally, in writing, or by electronic media; and shall provide the consumer with contact information for the consumer reporting agency that furnished the report on which the person relied. 15 U.S.C. § 1681m(a)(1), (2). In this case, Lynch Ford told Lopez that Lynch Ford had been unable to finance her purchase of the Jetta and that, if she wished to keep the car, she would have to provide a co-signer. Under the definition of "adverse action" set forth in § 1681, Lynch Ford's obligations to notify Lopez under § 1681m were triggered when it denied credit to Lopez.

It is unclear to this Court that Lynch Ford, rather than a lender such as a bank, denied credit to Lopez, but in keeping with the standard of review on summary judgment, this Court will view all facts in the light most favorable to the plaintiff. Therefore, because Lynch Ford was involved in the credit-granting process, this Court will treat it as a user of a credit report for the purposes of § 1681m. It is undisputed that Lynch Ford notified Lopez on or around October 24, 2002, that she had been denied financing in her own name. Def.'s Facts ¶ 24; Pls.'s Facts ¶ 93. However, it would be inappropriate to grant summary judgment simply because one of three

required elements has been met. As to the other two requirements under § 1681m(a), both parties are silent. Without any evidence on whether Lynch Ford provided the contact information of the consumer reporting agency involved, and informed Lopez of her right to obtain a free copy of her credit report and dispute any inaccuracies contained therein, this Court cannot grant summary judgment.

Even assuming that another section of 1681m applied to this case, and this Court notes again that it must engage in unwelcome and inappropriate legal speculation on this point because of the parties' failure to plead with specificity, summary judgment would still be unavailable. Section 1681m(b), which addresses adverse action taken based on information provided by a third party other than a consumer reporting agency, such as a bank or other lender, arguably might apply to these facts. However, the § 1681m(b) notice requirement also includes a requirement that the consumer make a "written request for the reasons for such adverse action ... within sixty days after learning of such adverse action." 15 U.S.C. § 1681m(b). Again, the parties are silent on whether Lopez made such a request. Thus, summary judgment would be improper. Summary judgment therefore is denied on plaintiffs' FCRA claim.

### G.   Violation of the Truth in Lending Act

Lopez and Rodriguez allege that Lynch Ford violated TILA, 15 U.S.C. § 1638(b)(1), and Regulation Z, 12 C.F.R. § 226.17(a)(1) and (b), by not providing either of them with Truth in Lending disclosures in a form they could keep before consummation of the transaction. Specifically, they allege that the October 31, 2002 Retail Installment Contract prepared by Lynch Ford improperly includes the costs of GAP and OmniCare insurance in the "amount financed"

disclosure.[3] Further, plaintiffs allege that the Vehicle Purchase Order Lopez signed on October 12, 2002 contained only some of the material disclosures required by TILA, but did not disclose the amount financed, the finance charge or the annual percentage rate for the transaction. Plaintiffs argue that Lopez is entitled to summary judgment on her TILA claim and that Rodriguez raises sufficient factual issues to prevent summary judgment from issuing for defendant.

Lynch Ford asserts that because Lopez's Purchase Order was not a contract, Lopez does not have standing to assert a TILA claim. Lynch Ford contends that including GAP insurance in the disclosure section of the Retail Installment Contract does not violate TILA because TILA is a disclosure statute, not a statute regulating whether GAP insurance is required.[4] Lynch Ford also alleges that it did deliver a copy of the disclosures to plaintiffs in a form they could keep prior to consummation.

### 1. Dispute Regarding Delivery of Written Disclosures In A Form That Parties May Retain Prior to Consummation

Under TILA and Regulation Z, creditors are required to make specific disclosures when extending credit to a consumer. These disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). In addition, these disclosures must be made "before consummation of the transaction." 12 C.F.R. § 226.17(b).

---

[3] There is some confusion in plaintiffs' pleadings on this point. The complaint states that "GAP insurance should be included" but all of plaintiffs' subsequent briefing suggests that plaintiffs actually believe GAP insurance should not have been included. This Court will analyze the pleadings on the latter basis.

[4] It is worth noting that Lynch Ford erroneously stated that plaintiffs only cited 15 U.S.C. § 1638(b)(1) in their complaint. In fact, plaintiffs also cited section 1638(a)(2)(A), which addresses the calculation of the "amount financed." Pls.'s Compl. at ¶67.

Lynch Ford asserts that because it entered a Retail Installment Contract agreement with Rodriguez only, Lopez does not have standing to raise a TILA claim. Lopez, by contrast, states that the Vehicle Purchase Order she signed on October 12, 2002, bound her to the credit transaction, and that she therefore was entitled to full TILA disclosures at that time. The cases plaintiff cites to support this assertion are inapposite, however, but rather support the position that TILA disclosures must be made at the time the RIC is consummated. See, e.g., Crowe v. Joliet Dodge, No. 00 C 8131, 2001 U.S. Dist. LEXIS 10066 (N.D. Ill., Jul. 18, 2001); Holley v. Gurnee Volkswagen and Oldsmobile, Inc., No. 00 C 5316, 2001 U.S. Dist. LEXIS 7274 (N.D. Ill., Jan. 8, 2001). Plaintiff Lopez's argument, by implication, seeks to shift the TILA analysis from the moment of consummation of the RIC to the moment of consummation of the VPO. By its very terms, however, the VPO contemplates that the parties will enter into a future RIC agreement and that in the interim, the dealer will attempt to obtain financing for the transaction. Lopez's argument, if adopted, would require disclosure of financing terms before financing has been obtained. Lynch Ford asserts that this is impossible.

With regard to plaintiff Rodriguez, this Court notes that plaintiffs again have not provided sufficient evidence to meet their burden on the TILA violation claim. A dealer complies with TILA even when he or she gives the consumer the RIC as little as one second before consummation, so long as there is no evidence that the consumer was prevented from keeping a copy of the TILA-conforming contract before signing it. See Polk v. Crown Auto, Inc., 221 F.3d 691 (4th Cir. 2000); Marshall v. Webb Chevrolet, Inc., No. 01 C 3619, 2002 U.S. Dist. LEXIS 10250, at *14 (N.D. Ill. June 7, 2002); Diaz v. Joe Rizza Ford, Inc., No. 00 C 7082, 2001 U.S. Dist. LEXIS 18198 (N.D. Ill. Nov. 2, 2001). Here, a copy of the RIC signed by Rodriguez was

produced as an attachment to defendant's motion for summary judgment. Rodriguez received a copy of the RIC from Lynch Ford. Pls.'s Resp. to Def.'s Stmt of Facts at ¶48. Despite her understanding that this was a co-signer agreement, Lopez did not receive a copy of the RIC. Lopez Aff. at ¶¶ 1, 3. Because there is a disputed issue of material fact about whether this was meant to be a co-signer deal, as Lopez and Rodriguez claim they were led to believe, summary judgment is inappropriate.

> ### 2.     GAP Insurance Disclosure Requirements Under TILA

Guaranteed Auto Protection insurance, commonly known as GAP insurance, is a form of debt cancellation coverage. It acts to cancel any outstanding loan deficiency if a consumer's property insurance is insufficient to pay off the loan on an automobile that is stolen or destroyed. The Agreement Addendum signed by Gabriel Rodriguez on October 31, 2002, includes a paragraph at the bottom of the page that reads, "Borrower/lessee further understands that this Addendum is not required in order to obtain financing or to purchase the vehicle. You acknowledge that your participation in this GAP Program is voluntary and not a condition of the installment sale contract/loan/lease." GAP Installment Sale Addendum, Oct. 31, 2002. Rodriguez signed this Addendum at the time he signed the Retail Installment Contract. The $495 fee for GAP insurance was not included in the "finance charges" assessed on the Jetta; instead, it was included in the amount financed and was subject to interest charges. Rodriguez Retail Installment Contract, Oct. 31, 2002.

TILA requires creditors to disclose any finance charges that a consumer will pay in a credit purchase. Rivera v. Grossinger Autoplex, Inc., 274 F.3d 1118, 1121 (7th Cir. 2001). "Finance charges" can include debt cancellation coverage, such as GAP insurance.

Under Regulation Z, which was cited by the Seventh Circuit in Rivera, debt cancellation fees may be excluded from a finance charge in a car purchase if three requirements are met: A) the debt cancellation coverage is not required by the creditor and this fact is disclosed in writing; B) the fee or premium for the initial term of coverage is disclosed; and C) the consumer signs or initial an affirmative written request for coverage after being given the previous two disclosures. 12 C.F.R. § 226.4(d)(3)(i); Rivera, 274 F.3d at 1121. Under TILA, all disclosures made under these requirements must also be clear and conspicuous. 12 C.F.R. § 226.17(a)(1).

We examine the sufficiency of TILA-mandated disclosures "from the standpoint of an ordinary consumer." Smith v. Cash Store Management, Inc., 195 F.3d 325, 327-28 (7th Cir. 1999). Lynch Ford argues that the plain language of the disclosure paragraph on the GAP Addendum meets this requirement. It discloses that enrollment in the GAP program is voluntary and that it is not required to purchase the vehicle. However, unlike the disclosure at issue in Rivera, the Lynch Ford GAP agreement disclosure does not use capital letters or bold face type to draw attention to its terms. In fact, the disclosure is printed at the bottom and in the smallest type on that page. In addition, the GAP agreement conflicts with the RIC. The Retail Installment Contract lists the insurer as "Resource," whereas the Addendum identifies the insurer as "The Evergreen Organization, Inc."

Lopez and Rodriguez also assert that they purchased GAP insurance because Lynch Ford employees told them orally that it was required by Illinois law, despite any voluntariness disclosure printed on the page. Lynch Ford argues that the written disclosure is sufficient under TILA to overcome this argument. Defendants, however, cite no authority to support the proposition that "a disclaimer in a separate contract overrides, as a matter of law, a contrary oral

representation in this context." <u>Brugger v. Elmhurst KIA</u>, No. 01 C 1860, 2001 WL 845472, at *2 (N.D. Ill. July 24, 2001). Moreover, Rodriguez testified in his deposition, at which he required a Spanish language translator, that he did not understand well what the Lynch Ford employees were saying to him and his niece about the forms he was asked to sign. Rodriguez Dep. at 17. Given these facts, this Court finds that Lynch Ford has not established that it met the Regulation Z requirements to exclude GAP insurance from the finance charge. Therefore, summary judgment is inappropriate on Rodriguez's TILA claim regarding the GAP insurance addendum.

### H. Violations of the Illinois Consumer Fraud and Uniform Deceptive Trade Practices Acts

Plaintiffs assert that Lynch Ford engaged in a series of deceptive business practices that support a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). 815 ILCS 505/2 *et seq.* Specifically, plaintiffs alleges that defendants engaged in bait and switch advertising tactics; violated the Illinois Administrative Rules on Motor Vehicle Advertising; arranged a straw purchase of the Jetta; incorrectly told plaintiffs that GAP insurance was required by law; created false documents to convince Lopez that she was part of the purchase contract for the car; lied to plaintiffs about bank procedures for co-signer agreements; and committed an unfair trade practice known as "spot delivery." Pls.'s Compl. at ¶¶74-82. Defendant alleges that it did not engage in deceptive business practices. These assertions divide into two general issues: Lynch Ford's alleged misrepresentations in advertising; and Lynch Ford's alleged improper "spot delivery" tactics. For ease of comprehension, each issue will be addressed separately.

To establish a violation of the Consumer Fraud Act, plaintiff must show: 1) that the defendant engaged in a deceptive act or practice; 2) that the defendant intended that plaintiff rely on that deception; 3) that the deception occurred in the course of conduct involving commerce or trade; and 4) that the act proximately caused damage. Rayburn v. Car Credit Center Corp., No. 00 C 3361, 2000 WL 1508238, at *3 (N.D. Ill. Oct. 10, 2000); see Williams v. Thomas Pontiac, No. 99 C 882, 1999 WL 787488, at *2 (N.D. Ill. Sep. 24, 1999).

### 1. Lynch Ford's Alleged Bait-and-Switch and Advertising Tactics

Lopez and Rodriguez assert that Lynch Ford placed an advertisement in the *Chicago Sun-Times* that offered to help consumers with poor credit improve their credit through the purchase of a car. Plaintiffs state in their complaint that such advertisements "create a likelihood of confusion or misunderstanding by consumers" and represent a deceptive trade practice. Lynch Ford asserts that because plaintiffs provided no further allegations or evidence, summary judgment should issue for defendant. This Court finds that plaintiffs have not met their summary judgment burden on these elements of their claim.[5] Plaintiffs did not provide a copy of the advertisement in question nor did they provide any other supporting evidence as to its existence or content. Lopez admitted she cannot remember the text of the advertisement, only that it mentioned improving credit. This is insufficient to defeat a motion for summary judgment.

### 2. Lynch Ford's Alleged Spot Delivery Practices

Plaintiffs allege that Lynch Ford engaged in a practice known as "spot delivery." Lynch Ford argues that plaintiffs misunderstand the meaning of "spot delivery." Instead, defendants

---

[5]In fact, plaintiffs failed to cite the Illinois Administrative Rules on Motor Vehicle Advertising with any degree of specificity. A generic reference to a statute or rule is insufficient to ground a pleading.

argue, Lynch Ford exercised its rights under the Vehicle Purchase Order to cancel the sale of a vehicle when financing is not available.

Plaintiffs' argue that Lynch Ford engaged in spot delivery when it allowed Lopez to take possession of the Jetta, believing that the retail installment sale was final and that financing had been obtained for her on the terms discussed. The Seventh Circuit defines "spot delivery" as when a dealer enters a sales contract with a consumer at a low interest rate; gives the consumer possession of the new car and accepts the consumer's trade-in (if any); and then, some time later, notifies the consumer that their financing has fallen through and that they must enter a new, less favorable, financing agreement. Consumers agree to do so because they have become emotionally attached to the new car and because they no longer have the trade-in. See Janikowski v. Lynch Ford, Inc., 210 F.3d 765, 768 (7th Cir. 2000). The terms of the Vehicle Purchase Order state that the sale is not final until financing can be arranged. Lopez Purchase Order, Oct. 12, 2002. Lynch Ford reserves the right to cancel the purchase order if it cannot obtain financing within fifteen days. The parties do not dispute that Lynch Ford informed Lopez within that fifteen day time period that it had been unable to obtain financing for her. Lopez, however, asserts that Lynch Ford told her that she had been financed and that she took possession of the Jetta on October 12, with the belief that the terms of the purchase order had been accepted by a lender. Lopez Dep. at 20. Lopez has provided sufficient evidence to establish that there is a disputed issue of material fact on this claim. For these reasons, defendant's motion for summary judgment on plaintiffs' Illinois Consumer Fraud Act claim is denied.

**Conclusion**

For the foregoing reasons, defendant's motion to strike portions of plaintiffs' brief is denied.

Defendant's motion for summary judgment is granted in part and denied in part. Specifically, summary judgment is granted to defendant on plaintiffs' claim II, and denied on Claims I, III, IV, and V.

Enter:

David H. Coar
United States District Judge

Dated: **November 16, 2004**